**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 11-1666

—————————

In re: KALLIOPI MAKRIS,
                                                Appellant

—————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 09-cv-05911)
District Judge:  Honorable William J. Martini

—————————

Submitted Under Third Circuit LAR 34.1(a)
April 17, 2012

—————————

Before: VANASKIE, BARRY and CUDAHY,[*] Circuit Judges

(Opinion Filed:  May 23, 2012)

—————————

OPINION

—————————

BARRY, Circuit Judge

      Appellant Kalliopi Makris ("Makris"), the debtor in an ongoing Chapter 13

bankruptcy proceeding, appeals from the District Court's affirmance of the Bankruptcy

Court's award of $54,093.75 in attorneys' fees and costs to her creditor, Amboy National

---

[*] Honorable Richard D. Cudahy, Senior Circuit Judge for the United States Court of
Appeals for the Seventh Circuit, sitting by designation.

Bank ("Amboy"). Because the fee award exceeds that which is provided for under the terms of the contract governing Makris's obligations to Amboy, we will vacate the award and remand for a determination of the proper amount of fees.

## I. Background

### A. Underlying Mortgage, Default, and Guaranty

In 1987, Amboy provided Makris with financing for the purchase of a home. Makris and Amboy executed a note memorializing the terms of this loan ("the Note"). Among other things, the Note included the following fee provision:

> [Amboy] will have the right to be paid back by [Makris] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

In 2000, Makris defaulted on her mortgage. After initially commencing foreclosure proceedings, Amboy agreed to modify the terms of the Note and allow Makris to keep her home on the condition that she provide additional security for the loan. Consistent with that agreement, Makris's employer, Dr. Benjamin Levine ("Levine"), issued a personal guaranty ("the Guaranty") to Amboy, making him liable for the debt in the event of default. Makris did not sign the Guaranty and was not a party to the agreement.

In 2002, Makris again defaulted, and Amboy sought payment from Levine pursuant to the Guaranty. When he refused to pay, Amboy brought suit against him in the Superior Court of New Jersey to enforce the Guaranty. In response, Levine initiated a

2

"campaign of frivolous motions and counterclaims," which included the filing of a $12 million dollar counterclaim against Amboy, lawsuits against Amboy's general counsel and the Clerk of the Superior Court in their personal capacities, numerous applications in Makris's foreclosure action, and several frivolous appeals. *Makris v. Amboy Bank*, 2008 U.S. Dist. LEXIS 90333, at *6 (D.N.J. Oct. 23, 2008). As a result of Levine's "prolific efforts to resist performing on his obligations under the Guaranty," Amboy amassed over $80,000 in attorneys' fees. *Id.* at *5-6.

## B. First Fee Award and Subsequent Reversal

While Amboy's legal battle with Levine was still ongoing, it initiated foreclosure proceedings against Makris. In order to avoid losing her home, Makris filed for Chapter 13 bankruptcy on November 7, 2003, and her repayment plan was confirmed by the Bankruptcy Court on April 16, 2004. In June of 2005, Amboy, apparently weary of battling Levine, filed a revised fee application with the Bankruptcy Court seeking reimbursement from Makris for the fees it had incurred in the Levine litigation. Thus, in addition to the principal loan amount of $109,000, Amboy sought from Makris $71,212 in attorneys' fees and costs, most of which were "related substantially" to its litigation with Levine and his efforts to resist payment. *Id.* at *6. Makris objected, and the Bankruptcy Court held a hearing to determine the amount for which she was responsible. Ultimately, the Bankruptcy Court determined that Amboy had a mortgage lien against Makris in the amount of $172,706, including the attorneys' fees incurred by Amboy in the Levine

3

litigation. On September 27, 2005, the Bankruptcy Court modified Makris's Chapter 13 plan to reflect this amount.

Two years later, having obtained new counsel, Makris moved for reconsideration of that ruling on the ground that she should not have been held responsible for the costs and fees incurred by Amboy in its litigation with Levine over the Guaranty.[1] On April 3, 2008, the Bankruptcy Court denied the motion for reconsideration, and Makris timely appealed to the District Court. On October 23, 2008, the District Court reversed and held that Makris was not responsible for the legal fees incurred by Amboy in its litigation with Levine. In an opinion accompanying this order, Judge Debevoise explained that because the Note obligated Makris to bear only those attorneys' fees incurred by Amboy in "enforcing this Note," she was not responsible for fees incurred by Amboy in its attempt to collect from Levine under the Guaranty, which was a "legally separate contract" to which Makris was not a party. *Id.* at \*13-17. The case was remanded to the Bankruptcy Court "for determination of the proper fee allocation." *Id.* at \*17.

C. Second Fee Award and Subsequent Affirmance

On remand, Amboy filed a revised fee application seeking approximately $92,614 in fees and costs—over $20,000 more than had been sought in its original fee application. Although this revised application did not include the fees from litigation between Amboy

---

[1] Although Amboy argued that this motion was untimely, the Bankruptcy Court construed it as a request for reconsideration pursuant to Federal Rule of Bankruptcy Procedure 3008 and 11 U.S.C. § 502(j). As a bankruptcy court has discretion to consider such requests at any time prior to the close of bankruptcy proceedings, the motion was not time barred.

and Levine, it did include over $61,174 in fees incurred by Amboy in unsuccessfully litigating whether Makris was responsible for the fees for the Levine litigation (so-called "fees-on-fees"). The rest of the fees in Amboy's application were incurred in the performance of various other legal services, such as generating payoff figures, monitoring the status of payments, and holding monthly conferences. After hearing oral argument on the fee application, the Bankruptcy Court made a number of reductions and disallowances to Amboy's claimed fees. Nonetheless, it ultimately held that Makris was responsible for $54,093.75 in costs and fees.

The Bankruptcy Court did not provide a line-by-line breakdown of its figures, but it appears that the bulk of this award, like the bulk of Amboy's application, was comprised of the fees-on-fees.[2] Although Judge Debevoise had ruled that Amboy was not entitled to fees from the Levine litigation, the Bankruptcy Court concluded that Amboy was entitled to fees it incurred in pursuing those fees—even if in a losing cause—because it was "acting in vindication of obtaining what, in [its] understanding, was the correct amount due under the note." In other words, because the Bankruptcy Court found that Amboy had a reasonable, albeit ultimately incorrect, belief that the terms of the Note made Makris responsible for the Levine fees, it held that Makris had to reimburse Amboy for the fees it incurred in unsuccessfully litigating this question.

---

[2] Makris states, and Amboy does not dispute, that "the bulk of the fees" awarded by the Bankruptcy Court were fees-on-fees generated by Amboy in "unsuccessfully opposing Makris's efforts to limit her liability to those fees incurred by Amboy in enforcing the Note."

Makris timely appealed the Bankruptcy Court's ruling to the District Court. On February 10, 2011, Judge Martini, to whom the case had been assigned on the second appeal, affirmed the Bankruptcy Court's ruling, including the award of fees-on-fees. In an accompanying opinion, Judge Martini characterized the language of the Note's fee provision as "broad" and stated that "any reasonable actions Amboy took to enforce any of Makris's obligations under the Note would fall under the attorneys' fees provision." This appeal followed.

## II. Jurisdiction & Standard of Review

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and the District Court had jurisdiction pursuant to 28 U.S.C. § 158(a). On appeal, we have jurisdiction pursuant to 28 U.S.C. §§ 158(d)(1) and 1291. "Exercising the same standard of review as the District Court, we review the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re Am. Pad & Paper Co.*, 478 F.3d 546, 551 (3d Cir. 2007) (citation and internal quotations omitted).

## III. Discussion

Makris challenges the fee award on three grounds: (1) that the award exceeds that which is provided for under the terms of the Note; (2) that, as a matter of law, a party may not recover fees for a matter decided adversely to it; and (3) that the amount of the award is substantively unreasonable. Because we are persuaded by the first of these grounds—

6

namely, that the Bankruptcy Court's fee award exceeds that which is provided for under the Note—we need not reach the remaining two grounds.

Pursuant to 11 U.S.C. § 506(b), an oversecured creditor, such as Amboy, may recover "any reasonable fees, costs, or charges provided for under the agreement . . . under which [its] claim arose."  11 U.S.C. § 506(b).  Thus, for the fee award in this case to have been proper, it must have been provided for under the agreement giving rise to the claim, i.e. the Note.  *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *see also* 4 Collier on Bankruptcy § 506.04 ("[F]ees, costs and charges are not allowable under section 506(b) . . . in the absence of a contractual or statutory entitlement.").  The attorneys' fee provision of the Note reads as follows:

> [T]he Note Holder will have the right to be paid back by me for all of its costs and expenses *in enforcing this Note* to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

(App. at 21 (emphasis added.))  The parties agree that the phrase "in enforcing this Note" operates as a limitation on the amount of fees potentially recoverable by Amboy, as there is no dispute that Amboy is not entitled to collect attorneys' fees that were not incurred "in enforcing the Note."  Accordingly, the propriety of the fee award turns on the question of whether the fees claimed by Amboy actually were incurred "in enforcing the Note."[3]

---

[3] As mentioned above, the disputed fees fall into two categories: fees-on-fees arising from Amboy's attempt to hold Makris responsible for fees from the Levine litigation, and other miscellaneous fees incurred after the principal amount of the claim was established.  We address each type of fee separately.

7

A. Fees-on-Fees

Makris argues that Amboy is not entitled to recover fees-on-fees because its unsuccessful attempt to hold her responsible for the fees it incurred in the Levine litigation was not an action taken in "enforcing the Note." To hold otherwise, she argues, would in effect still make her responsible for "the costs of the Levine action, but in a round-about way." Amboy counters that the language in the fee provision should be construed broadly. It asserts that "[a]s the 'fee provision' is part of the Note, the enforcement of the 'fee provision' is, by definition, the enforcement of the Note."

We begin with the terms of the Note itself. Because contract construction is a question of law, we exercise plenary review of the Bankruptcy Court's determination of the legal operation of the fee provision. *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys.*, 247 F.3d 44, 53 n.2 (3d Cir. 2001). Absent some ambiguity, contracts should be construed in accordance with the plain and ordinary meaning of their terms. *Am. Legacy Found., RP v. Nat'l Union Fire Ins. Co.*, 623 F.3d 135, 139 (3d Cir. 2010). "[A] contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 364 (3d Cir. 2004) (internal citation and quotations omitted).

In light of these principles, Amboy's unsuccessful attempt to hold Makris liable for the fees incurred in the Levine litigation cannot be viewed as "enforcing the Note." As the Judge Martini recognized, the word "enforce" is defined as "to give force or

8

effect" or "compel obedience to." *Black's Law Dictionary* 549 (7th ed. 1999). Thus, in the context of a home mortgage secured by a note, the plain and ordinary meaning of the phrase "enforcing the Note" can only refer to efforts to compel a borrower to perform his or her obligations under the note. Any efforts to compel a borrower to do something that is *not* required under the note cannot be viewed as "enforcing the Note" in any ordinary or plain sense. Rather, such efforts aim to compel some performance *beyond* that which the terms of the note require. Here, Makris was not required to pay the fees incurred by Amboy in the Levine litigation, and so Amboy's attempt to compel Makris to pay these fees cannot reasonably be viewed as "enforcing the Note."

Amboy maintains, however, that "[a]s the 'fee provision' is part of the Note, the enforcement of the 'fee provision' is, by definition, the enforcement of the Note." In other words, Amboy asserts that when it seeks fees under the Note—even fees that it ultimately has no right to obtain—it is "enforcing the Note," and so Makris must bear Amboy's costs if she wishes to contest the fee application. Such an interpretation of the Note's fee provision is unreasonable, as it would place Makris in a no-win situation: either she can simply pay the attorneys' fees Amboy seeks, or she can contest the fee application and bear the cost of Amboy's fees in the resulting litigation—even if she prevails. In either case, Makris has to pay, and Amboy is guaranteed to recover at least some attorneys' fees regardless of the litigation's outcome. Given these manifestly unjust consequences, such a construction of the contract must be rejected.

9

Amboy also argues that the language used in the fee provision—specifically, the phrase "all its costs and expenses in enforcing this Note"—suggests that the Note should be given a broad construction. It maintains that "the use of the word 'all' is a clear expression of the parties' intent to broadly provide for the recoupment of Amboy's fees." And echoing Judge Martini's reasoning, it asserts that the word "enforcing," as used here, "encompasses a range of legal actions, provided those actions seek 'to give force or effect' or 'compel obedience to' obligations memorialized in the Note." Given these definitions, Amboy claims that "any reasonable actions [it] took to enforce any of Makris's obligations under the Note would fall under the attorneys' fees provision." This argument misses the point, however, because the actions for which Amboy now seeks fees were *not* taken "to enforce any of Makris's obligations under the Note." To the contrary, as Judge Debevoise had made quite clear, the Note did *not* obligate Makris to reimburse Amboy for the Levine litigation fees, and so Amboy was *not* acting to enforce an obligation of Makris when it pursued those fees. Accordingly, ascribing a broad meaning to the terms "all" and "enforcing" does not support Amboy's ultimate position.

In the end, rejecting Amboy's application for fees-on-fees does not require us to determine the exact contours of what counts as "enforcing the Note." It is clear, however, that Amboy's failed attempt to hold Makris responsible for the fees it incurred in litigation with Levine to enforce the Guaranty—a separate legal instrument to which Makris was not a party—is simply too far removed from any ordinary understanding of

10

the phrase "enforcing the Note" to be covered by the fee provision.

## B. Other Miscellaneous Fees

Amboy does not dispute Makris's representation that "the bulk of the fees" awarded by the Bankruptcy Court were fees-on-fees generated by Amboy in its unsuccessful attempt to collect fees for the Levine litigation from Makris. It appears, however, that at least some portion of the award reimbursed Amboy for fees incurred in the provision of other miscellaneous legal services performed after the amount of the claim was established, such as generating payoff figures, monitoring the status of payments, and holding monthly conferences to track the progress of the case. Although the Bankruptcy Court disallowed some fees incurred in simply monitoring the status of the case, it did not make available a line-by-line accounting of its figures and so the record does not reflect how many of these miscellaneous charges were included in the fee award.

It is Makris's position that she is not responsible for any fees incurred after Amboy filed its proof of claim because no actions to "enforc[e] the Note" were required beyond that point.[4] At the hearing, the Bankruptcy Court remarked that foot-dragging on the part of the debtor is common in Chapter 13 bankruptcy cases and requires a "whole panoply" of enforcement actions from the bank. Significantly, however, the Court noted that this

---

[4] Makris does concede that Amboy's filing of its proof of claim was an action taken in "enforcing the Note," and thus she does not contest the $1,121 in fees sought by Amboy in connection with that task. This amount is in addition to $5,082 in attorneys' fees already awarded to Amboy in connection with this action.

"didn't happen in this case," as Makris never defaulted on any of her payments or challenged the principal amount of the lien. Still, the parties dispute whether certain costs, such as the fees incurred by Amboy in responding to various applications and payoff requests from Makris's former counsel, are rightly considered "enforcing the Note." At the hearing before the Bankruptcy Court, Makris's current counsel stated that "[o]ur understanding of those other applications . . . [is] that they were related to Dr. L[e]vine and pursuing those fees against the Makrises." Nonetheless, Makris's counsel admitted that, as to at least some of previous counsel's applications, "I was not the attorney at the time so I don't understand if there was some other thing going on." Given the sparse record before us, it is not even possible to tell whether the Bankruptcy Court actually awarded these fees to Amboy, let alone whether the fees *should* have been awarded under the terms of the Note. Accordingly, we will remand on this point so that the Bankruptcy Court may determine how much, if any, of these miscellaneous legal services were provided in "enforcing the Note."

## IV. Conclusion

Because the fee awarded to Amboy exceeds that which is provided for under the contractual terms of the parties' agreement, we will vacate the District Court's affirmance of the Bankruptcy Court's fee award and remand for a determination of the proper amount of fees to be awarded. We would hope that the parties resolve this matter without further judicial involvement.

12